IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JUSTIN GLENN REYNOLDS, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | No. 3:17-cv-2443-M-BN |
| | § | |
| LORIE DAVIS, Director | § | |
| Texas Department of Criminal Justice | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Justin Glenn Reynolds, at the time a Texas prisoner, filed in the
Eastern District of Texas a *pro se* application for writ of habeas corpus under 28
U.S.C. § 2254 concerning his Navarro County conviction for possession of a controlled
substance, asserting that his counsel were constitutionally ineffective and that his
trial was constitutionally deficient. *See* Dkt. Nos. 1 & 2.

After the resulting habeas case was transferred to this district, *see* Dkt. No. 5,
it was referred to the undersigned United States magistrate judge for pretrial
management under 28 U.S.C. § 636(b) and a standing order of reference from Chief
Judge Barbara M. G. Lynn.

The State filed a response opposing relief. *See* Dkt. No. 17. And Reynolds filed
an out-of-time reply brief. *See* Dkt. Nos. 20-25.

The undersigned enters these findings of fact, conclusions of law, and
recommendation that the Court should deny Reynolds's request for federal habeas

relief.

## Applicable Background

"The jury convicted Justin Reynolds of the offense of possession of a controlled substance. The trial court assessed punishment at 25 years confinement." *Reynolds v. State*, No. 10-15-00124-CR, 2016 WL 1394644, at *1 (Tex. App. – Waco Apr. 7, 2016, no pet.); *see also State v. Reynolds*, No. C35736-CR (Cnty. Court at Law, Navarro Cnty., Tex.).

This version of the facts underlying his conviction are from his appellate brief:

Appellant was a passenger in a vehicle driven by his wife, Jennifer Reynolds …. The vehicle, a white Chevy Tahoe, was registered in the name of Appellant and his wife. Trooper Grauzer stopped the vehicle early in the morning for failure to signal a left hand turn. At the outset of the traffic stop, which was recorded in its entirety on the Trooper's dash-cam video, Mrs. Reynolds requested to be able to step out and speak to the trooper. She informed him that she believed she had warrants and that she did not have a valid license. She provided him with a story as to why she was on the road at that time with no license that he found suspicious. She told him her baby, which was in the back seat, was not breathing right and was turning purple. However, Trooper Grauzer had observed the baby asleep in a car seat in the back and the baby appeared to be completely fine and in no distress. Mrs. Reynolds had a red rash all over her face and arms. She was anxious and talking very fast. She did not know the name of a friend in the back seat who she said was at her house working on the computer. As she sat in the patrol car with Trooper Grauzer, she talked about her prior involvement with drugs and her stress level. Trooper Grauzer received a radio communication from a Navarro County Sheriff Deputy Shane Richards that indicated that Mrs. Reynolds was involved in narcotics and the deputy advised he was on route. The deputy further asked Trooper Grauzer to identify the passengers. This advice could have been for further investigation or as a warning regarding the safety of the situation. It was confirmed that Mrs. Reynolds had an invalid license. Mrs. Reynolds informed the trooper that both passengers had been drinking that night. Trooper Grauzer wrote Mrs. Reynolds a citation, and allowed her to get back into the vehicle while he identified the passengers. He allowed her to think that he was going to "cut her loose"

because he was afraid of the situation and he felt he needed back up to continue to investigate the situation which included assessing if anyone had a valid license and was not impaired. Although he told her he was "cutting her loose" he had no intention of doing so at that time. The trooper returned to the vehicle to ask the passengers for ID. The back seat passenger was identified as Joshua Black. The dispatcher reported that there were warrants for Mr. Black and he was removed from the vehicle. As trooper Grauzer talked with Black outside the vehicle about the warrants, Deputy Richards arrived and located a black bag on the ground near the back passenger door. The bag was retrieved and opened and it contained drug paraphernalia. Mr. Black claimed the bag and its contents. The officers then began a full search of the Tahoe. During the search, officers first discovered pills near Mrs. Reynolds purse. Mrs. Reynolds and Appellant indicated to officers that there was more methamphetamine tucked up under the console. Officers then discovered a large quantity of methamphetamine stuffed up into the bottom of the dashboard near the steering column. Appellant told officers that Black had passed the bag from the back seat to Mrs. Reynolds and told her to hide it there. He pointed out a [trail] of loose crystals that indicated that methamphetamine had been passed between the driver's seat and the back seat where Mr. Black had been sitting. Also, they discovered a small baggie of methamphetamine on the driver's floorboard.

Additionally, Appellant alerted officers to a gun in the backseat that was also claimed by Mr. Black. Testimony from Joshua Black and Jennifer Reynolds support the State's argument that Appellant knew the drugs were in the car because he helped load his things into the car and had seen all of the methamphetamine, that the three of them had made an agreement for the Appellant and his wife to drive Mr. Black to Houston in exchange for 14 grams of methamphetamine, that they had driven him around to do his narcotics business on prior occasions, that they had all smoked meth from the same large bag that was found earlier in the day, and that on that very night, Black had weighed out amounts from the stash on his digital scale for both Appellant and Mr. Black to effectuate drug sales, which they in fact carried out that night. Further, both Black and Mrs. Reynolds testified that the three of them discussed where to hide the drugs and who was going to take the blame while waiting inside the car for the trooper to come back. Finally, Black testified that Appellant had driven the Tahoe earlier that night as they transported the drugs from Lancaster to North Dallas to Corsicana and up until the first stop in Corsicana where Jennifer took the wheel for the remainder of the journey. The Tahoe was registered in both Mrs. Reynolds and Appellant's names.

Dkt. No. 16-11 at 6-9 (record citations omitted).

Reynolds's criminal judgment was affirmed after his court-appointed appellate counsel filed a brief under *Anders v. California*, 386 U.S. 738 (1967), expressing her opinion that Reynolds's appeal was frivolous, and Reynolds failed to file a *pro se* appellate brief. *See Reynolds*, 2016 WL 1394644, at *1.

While Reynolds did not petition the Texas Court of Criminal Appeals ("CCA") for discretionary review, he did pursue state habeas relief. *See Ex parte Reynolds*, C-35736 (Cnty. Court at Law, Navarro Cnty., Tex.). And the CCA denied his habeas application without written order on findings of trial court without hearing. *See Ex parte Reynolds*, No. WR-86,861-01 (Tex. Crim. App. Aug. 23, 2017) [Dkt. No. 16-17; Dkt. No. 16-21 at 110-12].

## Legal Standards

"Federal habeas features an intricate procedural blend of statutory and caselaw authority." *Adekeye v. Davis*, 938 F.3d 678, 682 (5th Cir. 2019). In the district court, this process begins (and often ends) with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), under which "state prisoners face strict procedural requirements and a high standard of review." *Adekeye*, 938 F.3d at 682 (citation omitted). And, under AEDPA, where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Adekeye*, 938 F.3d at 682 ("Once state remedies are exhausted, AEDPA limits federal relief to cases where the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or was 'based on an unreasonable determination of the facts in light of the evidence presented.'" (citation omitted)); *see also Allen v. Vannoy*, 659 F. App'x 792, 798-99 (5th Cir. 2016) (per curiam) (describing Section 2244(d) as "impos[ing] two significant restrictions on federal review of a habeas claim ... 'adjudicated on the merits in state court proceedings'").

A state court adjudication on direct appeal is due the same deference under Section 2254(d) as an adjudication in a state post-conviction proceeding. *See, e.g., Dowthitt v. Johnson*, 230 F.3d 733, 756-57 (5th Cir. 2000) (a finding made by the CCA on direct appeal was an "issue ... adjudicated on the merits in state proceedings," to be "examine[d] ... with the deference demanded by AEDPA" under "28 U.S.C. § 2254(d)").

And "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *see also Sanchez v. Davis*, 936 F.3d 300, 305 (5th Cir. 2019) ("[T]his is habeas, not a direct appeal, so our focus is narrowed. We ask not whether the state court denial of relief was incorrect, but whether it was unreasonable – whether its decision was 'so lacking in justification' as to remove 'any possibility for fairminded

disagreement.'" (citation omitted)).

A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the [AEDPA] prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000); *see also Pierre v. Vannoy*, 891 F.3d 224, 227 (5th Cir. 2018) (a petitioner's lack of "Supreme Court precedent to support" a ground for habeas relief "ends [his] case" as to that ground).

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is

possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102 (internal quotation marks omitted); *see also Evans v. Davis*, 875 F.3d 210, 216 (5th Cir. 2017) (recognizing that Section 2254(d) tasks courts "with considering not only the arguments and theories the state habeas court actually relied upon to reach its ultimate decision but also all the arguments and theories it could have relied upon" (citation omitted)).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Richter*, 562 U.S. at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded

disagreement." *Id.* at 103; *accord Burt v. Titlow*, 571 U.S. 12, 20 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy." (internal quotation marks, brackets, and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). This presumption

applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) (Section 2254(e)(1) "'deference extends not only to express findings of fact, but to the implicit findings of the state court.' As long as there is 'some indication of the legal basis for the state court's denial of relief,' the district court may infer the state court's factual findings even if they were not expressly made." (footnotes omitted)).

And "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Richter*, 562 U.S. at 98; *see also Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam))); *Evans*, 875 F.3d at 216 n.4 (even where "[t]he state habeas court's analysis [is] far from thorough," a federal court "may not review [that] decision de novo simply because [it finds the state court's] written opinion 'unsatisfactory'" (quoting *Neal*, 286 F.3d at 246)).

Section 2254 thus creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny

relief." *Richter*, 562 U.S. at 98. That is, a petitioner must, in sum, "show, based on the state-court record alone, that any argument or theory the state habeas court could have relied on to deny [him] relief would have either been contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court." *Evans*, 875 F.3d at 217.

## Analysis

Reynolds claims that both his appellate and his trial counsel were constitutionally ineffective, that his conviction is based on perjured testimony, that the trial court committed constitutional errors, and that there was prosecutorial misconduct during his trial. The Court will address these claims in turn.

I.    Ineffective Assistance of Counsel ("IAC")

The Court reviews IAC claims, whether directed at trial or appellate counsel, under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a habeas petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *See id.* at 687-88. To be cognizable under *Strickland*, trial counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687; *see also Buck v. Davis*, 137 S. Ct. 759, 775 (2017) (reaffirming that "[i]t is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed ... by the Sixth Amendment' that Strickland's first prong is satisfied" (citation omitted)).

The petitioner also must prove that he was prejudiced by his attorney's

substandard performance. *See Strickland*, 466 U.S. at 687, 692. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

> [B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."

*Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003). And, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Richter*, 562 U.S. at 110. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

Therefore, on habeas review under AEDPA, "if there is any 'reasonable argument that counsel satisfied *Strickland*'s deferential standard,' the state court's

denial must be upheld." *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) (quoting *Richter*, 562 U.S. at 105); *see also Sanchez*, 936 F.3d at 305 ("As the State rightly puts it, we defer 'both to trial counsel's reasoned performance and then again to the state habeas court's assessment of that performance.'" (quoting *Rhodes*, 852 F.3d at 434)).

To demonstrate prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Richter*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case." *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

IAC claims are considered mixed questions of law and fact and are therefore analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010); *Adekeye*, 938 F.3d at 682.

Where the state court adjudicated claims of ineffective assistance on the merits, this Court must review a habeas petitioner's claims under the "doubly

deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011); *compare Rhoades*, 852 F.3d at 434 ("Our federal habeas review of a state court's denial of an ineffective-assistance-of-counsel claim is 'doubly deferential' because we take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." (citation omitted)), *with Johnson v. Sec'y, DOC*, 643 F.3d 907, 910-11 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.").

In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101; *see also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal quotation marks and citations omitted)). In other words, AEDPA does not permit a *de novo* review of state counsel's conduct in these claims under *Strickland*. *See id.* at 101-02. Instead, on federal habeas review of a *Strickland* claim fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves

review under the *Strickland* standard itself." *Id.* at 101.[1]

Applying the deferential *Strickland* standards – through the deferential lens of AEDPA – to the CCA's denial of Reynolds's IAC claims, *see* Dkt. No. 16-21 at 110-12, Reynolds has not shown that the denial of any claim that either his trial counsel's or his appellate counsel's representation violated his rights under the Sixth Amendment amounts to either "an unreasonable application of *Strickland* or an unreasonable determination of the evidence." *Garza v. Stephens*, 738 F.3d 669, 680 (5th Cir. 2013) (citing 28 U.S.C. § 2254(d)(1)-(2)); *see also, e.g., Rhodes*, 852 F.3d at 432, 434; *Sanchez*, 936 F.3d at 305.

As to his trial counsel, Reynolds claims that his right to effective assistance under the Sixth Amendment was violated when counsel (1) failed to file a motion for

---

[1] *See also Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curiam) (explaining that federal habeas review of ineffective-assistance-of-counsel claims is "doubly deferential" "because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'"; therefore, "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt'" (quoting *Burt*, 571 U.S. at 22, 15)); *Adekeye*, 938 F.3d at 683-84 ("The Supreme Court standard on prejudice is sharply defined: 'It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.' [A petitioner] must show it was 'reasonably likely' the jury would have reached a different result, not merely that it could have reached a different result. The Court reaffirmed this point in *Richter*: 'The likelihood of a different result must be substantial, not just conceivable.' Now layer on top of that the habeas lens of reasonableness. [Where] the state court has already adjudicated [a petitioner's] ineffective-assistance claim on the merits, he must show that the court's no-prejudice decision is 'not only incorrect but "objectively unreasonable."' Put differently, [he] must show that every reasonable jurist would conclude that it is reasonable likely that [a petitioner] would have fared better at trial had his counsel conducted [himself differently]. 'It bears repeating,' the Supreme Court emphasized in *Richter*, 'that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" (footnotes omitted)).

new trial; (2) failed to move to suppress his wife's testimony; (3) failed to properly investigate; (4) failed to seat an unbiased jury; (5) failed to call an expert witness; and (6) failed to make objections.

First, the undersigned understands Reynolds's initial ground as primarily asserting that trial counsel was ineffective for not filing a motion for new trial based on his own ineffectiveness. *See, e.g.,* Dkt. No. 25-1 at 10-11. "There is a Sixth Amendment right to the assistance of counsel at the motion for new trial, during the post-trial, pre-appeal period, in Texas, because it is a critical stage." *McAfee v. Thaler*, 630 F.3d 383, 393 (5th Cir. 2011) (per curiam). But, even if a state court were to find trial counsel deficient for not filing a motion for new trial, there still must be "a reasonable probability that, but for [counsel's] professional errors, the state trial court would have granted [the defendant] a new trial." *Id.* at 397. And where, like here, a defendant argues that trial counsel was ineffective for not moving, "for new trial based primarily on the ineffective assistance of counsel at trial[, i]n Texas, to prevail on such a motion, [a defendant] would have to show that his counsel was ineffective at trial under *Strickland*." *Id.* (citation omitted). The state court found that Reynolds failed to make this showing. *See* Dkt. No. 16-21 at 112. And Reynolds has not shown that this finding is unreasonable.

Second, Reynolds believes that his counsel was ineffective for not moving to suppress Jennifer's testimony on the basis that she was drunk and motivated to lie. *See, e.g.,* Dkt. No. 2 at 12. Jennifer could have been impeached for these reasons. But neither is a basis for suppressing her testimony. So the state court was not

unreasonable in failing to find trial counsel constitutionally ineffective for this reason.

Third, Reynolds's failure-to-investigate ground seems to be better understood as asserting that his trial counsel failed to implement a better strategy. *See* Dkt. No. 25-1 at 11-13. This claim in the context of AEDPA requires this Court to "not simply [ ] give [Reynolds's counsel] the benefit of the doubt, … but to affirmatively entertain the range of possible reasons [his] counsel may have had for proceeding as [he] did." *Clark*, 673 F.3d at 421. Reynolds has not overcome the high standard to show that trial counsel's strategy was so defective as to violate the Sixth Amendment and has therefore not shown that the state court's denial of this claim was unreasonable.

To the extent that this ground should be strictly construed as a traditional failure-to-investigate claim, under *Strickland*, counsel's duty is "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." 466 U.S. at 691. And the Fifth Circuit has held that, "[i]n assessing unreasonableness a heavy measure of deference must be applied to counsel's judgments. A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) (citations omitted). Reynolds did not. Therefore, the state court's denial of this ground under *Strickland* was not unreasonable.

Fourth, Reynolds claims that his counsel's failure to strike a juror who had difficulty hearing amounted to an unreasonable trial tactic on the basis that the juror

was biased. *See, e.g.,* Dkt. No. 25-1 at 13-14. Not only has Reynolds not shown that the juror's hearing impairment caused him to be biased, he has not shown that his counsel's failure to strike this juror was "so ill chosen that it permeate[d] the entire trial with obvious unfairness." *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002) (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983)). Accordingly, he has not shown this Court that it was unreasonable for the state court to deny this ground for relief under *Strickland*.

Fifth, Reynolds's conclusory claim concerning trial counsel's alleged failure to call an expert witness similarly fails on habeas review.

> [C]omplaints of uncalled witnesses are not favored on habeas review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified to are largely speculative. *See Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981); *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978). To prevail on such a claim, a petitioner must show that the witness's testimony would have been favorable and that the witness would have testified. *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). And where the only evidence of missing witnesses' testimony is from the defendant, the court views claims of ineffective assistance with great caution. *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986).

*Dennis v. Quarterman*, No. 4:07-cv-20-Y, 2008 WL 1808546, at *4 (N.D. Tex. Apr. 21, 2008).

Finally, Reynolds contends that his trial counsel was constitutionally ineffective for failing to object to any reference of a second gun in the vehicle based on the trial court's suppression order. *See, e.g.,* Dkt. No. 2 at 14. But that order only suppressed (except in cases of impeachment) "the alleged statement by Mr. Reynolds" – not any reference to the gun. *See* Dkt. No. 17-1 at 7. He has therefore not shown that the state court's denial of this ground was unreasonable.

Turning to Reynolds claims against his appellate counsel,

[u]nder well-established principles, appellate counsel need not "raise every nonfrivolous ground of appeal available" in order to be effective. Instead, appellate counsel's failure to raise an argument on direct appeal will be considered ineffective only when counsel fails to perform "in a reasonably effective manner." This standard requires that appellate counsel "research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful." "Solid, meritorious arguments based on directly controlling precedent should be brought to the court's attention." Thus, to determine whether appellate counsel's performance was deficient, [a court] must consider whether [particular] arguments are "sufficiently meritorious such that [the petitioner's] counsel should have raised [them] on appeal."

*Higgins v. Cain*, 720 F.3d 255, 265 (5th Cir. 2013) (footnotes omitted).

If "they are not[,] … 'it would be well within the bounds of a reasonable judicial determination for the state court to conclude that [appellate] counsel could follow a strategy that did not require" raising [those] arguments on direct appeal." *Id.* (footnote omitted).

Reynolds asserts that counsel's failure to move for a new trial, failure to obtain a complete transcript, and failure to pursue plausible alternatives violated the Sixth Amendment. *See* Dkt. No. 1 at 6; Dkt. No. 2 at 10-14. But Reynolds has not shown that there were sufficiently meritorious arguments for counsel to raise on appeal and thus show that his counsel's chosen strategy (filing an *Anders* brief) demonstrates that appellate counsel was ineffective or – more importantly – that the state court's denial of these grounds for relief was unreasonable.

II.    Perjured Testimony

"The Due Process Clause of the Fourteenth Amendment forbids the government from knowingly using, or failing to correct, false testimony." *United*

*States v. Mason*, 293 F.3d 826, 828 (5th Cir. 2002) (citing *Giglio v. United States*, 405

U.S. 150, 153 (1972); *Napue v. Illinois*, 360 U.S. 264, 271 (1959)); *see also Isaac v.*

*Cain*, 588 F. App'x 318, 327 (5th Cir. 2014) (per curiam) ("Under *Napue*, 'a conviction

obtained through use of false evidence, known to be such by representatives of the

State, must fall under the Fourteenth Amendment.'" (quoting 360 U.S. at 269;

citations omitted)).

"To establish a due process violation based on the government's use of false or

misleading testimony, a petitioner must show (1) that the witness's testimony was

actually false, (2) that the testimony was material, and (3) that the prosecution knew

the witness's testimony was false." *Fuller v. Johnson*, 114 F.3d 491, 496 (5th Cir.

1997). But "due process is [ ] implicated by the prosecution's introduction or allowance

of false or perjured testimony [only when] the prosecution actually knows or believes

the testimony to be false or perjured; it is not enough that the testimony is challenged

by another witness or is inconsistent with prior statements." *United States v. Brown*,

634 F.2d 819, 827 (5th Cir. 1981) (citations omitted). Thus,

> [w]hen attempting to show perjured testimony, the false or misleading
> nature of certain testimony cannot be established simply by pointing to
> contradictory testimony from other witnesses, inconsistencies within a
> witness's testimony, or conflicts between or among written statements
> and live testimony. Such matters go only to the weight of the evidence
> and the credibility of the witness.

*Craig v. Director, TDCJ-CID*, No. 5:07cv167, 2013 WL 4711483, at *14 (E.D. Tex.

Aug. 30, 2013) (citing *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990)).

But that is all Reynolds has done. *See, e.g.,* Dkt. No. 2 at 14-15. As such, he has

not shown that the state court's denial of this claim was unreasonable.

III.    Trial Court Error

Reynolds next asserts that the trial court erred by (1) denying his motion for bond reduction and (2) by failing to keep out evidence that he claims was ordered suppressed. *See, e.g.,* Dkt. No. 2 at 16.

To prevail on these claims under habeas review, Reynolds must show that these alleged errors "'had a substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). So, "[e]ven if [the Court was] entitled to grant relief under one of the provisions of § 2254(d), [it] may not do so if the trial error was harmless" under the *Brecht* standard, *Burgess v. Dretke*, 350 F.3d 461, 466 (5th Cir. 2003), which is "'intended to apply to all federal habeas cases involving constitutional "trial" error,'" *id.* (quoting *Robertson v. Cain*, 324 F.3d 297, 306 (5th Cir. 2003)).

> In this circuit, under *Brecht*,
>
> a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is more than a mere reasonable possibility that it contributed to the verdict. It must have had a substantial effect or influence in determining the verdict. [But, if there exists] "virtual equipoise as to the harmlessness," under the *Brecht* standard, of the error, then [a court] must conclude that it was harmful.

*Mayabb v. Johnson*, 168 F.3d 863, 868 (5th Cir. 1999) (quoting *Woods v. Johnson*, 75 F.3d 1017, 1026-27 (5th Cir. 1996)).

Reviewing the state court findings and conclusions as to the claims of trial court error, Reynolds fails to show any error, much less error that was not harmless. *See also Traber v. United States*, 466 F.2d 483, 485 (5th Cir. 1972) (excessiveness of

- 20 -

bond may not be "appropriately raised by a § 2255 motion").

IV.    Prosecutorial Misconduct

Similarly,

[t]o prevail on a claim of prosecutorial misconduct, a habeas corpus
petitioner must show that the prosecutor's actions "'so infected the [trial]
with unfairness as to make the resulting [conviction] a denial of due
process.'" *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000)
(quoting *Ables v. Scott*, 73 F.3d 591, 592 n. 2 (5th Cir.1996)).
"Prosecutorial misconduct is not a ground for relief unless it casts
serious doubt upon the correctness of the jury's verdict." *Styron v.
Johnson*, 262 F.3d 438, 449 (5th Cir. 2001). In other words, the alleged
conduct must render the trial fundamentally unfair within the meaning
of the Due Process Clause of the Fourteenth Amendment. *See Darden v.
Wainwright*, 477 U.S. 168, 180-81 (1986).

*Batiste v. Quarterman*, 622 F. Supp. 2d 423, 435 (S.D. Tex. 2008); *see also Darden*,
477 U.S. at 181 ("[T]he appropriate standard of review for such a claim on writ of
habeas corpus is the narrow one of due process, and not the broad exercise of
supervisory power." (quotation marks omitted)).

Reynolds's conclusory contentions that the prosecutor committed misconduct
by presenting evidence that was manipulated by the police – claiming that an officer's
taking the drugs out of the automobile while still on the floormats to photograph them
in a better light and then placing the floormats back into the automobile and
photographing them again to show placement – does not meet this standard.

**Recommendation**

The Court should deny the application for a writ of habeas corpus.

A copy of these findings, conclusions, and recommendation shall be served on
all parties in the manner provided by law. Any party who objects to any part of these
findings, conclusions, and recommendation must file specific written objections

within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: May 18, 2020

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE